**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

**ERICK CLASEN,**

                 **Plaintiff,**          **3:13-cv-1390
                                                                                                                                    (GLS/ESH)**

           v.

**CAROLYN W. COLVIN,**
Commissioner of Social Security,

                 **Defendant.**
_____

**APPEARANCES:**                              **OF COUNSEL:**

**FOR THE PLAINTIFF:**
Lachman, Gorton Law Firm           PETER A. GORTON, ESQ.
P.O. Box 89
1500 East Main Street
Endicott, NY 13761-0089

**FOR THE DEFENDANT:**
HON. RICHARD S. HARTUNIAN     JEREMY A. LINDEN
United States Attorney                 REBECCA H. ESTELLE
Syracuse, NY 13261                    Special Assistant U.S. Attorneys

Steven P. Conte
Regional Chief Counsel
Social Security Administration
Office of General Counsel, Region II
26 Federal Plaza, Room 3904
New York, NY 10278

**Gary L. Sharpe
Chief Judge**

## **MEMORANDUM-DECISION AND ORDER**

### I. **Introduction**

Plaintiff Erick Clasen challenges defendant Commissioner of Social Security's denial of Disability Insurance Benefits (DIB), seeking review under 42 U.S.C. § 405(g). (Compl., Dkt. No. 1.) In a Report and Recommendation (R&R) filed November 7, 2014, Magistrate Judge Earl S. Hines recommended that the Commissioner's decision be reversed. (Dkt. No. 20.) Pending are the Commissioner's objections to the R&R. (Dkt. No. 22.) For the reasons that follow, the court declines to adopt the Magistrate Judge's Recommendation, and affirms the Commissioner's decision.

### II. **Background**[1]

On June 18, 2011, Clasen filed an application for DIB under the Social Security Act. (Tr.[2] at 97, 163-69.) After his application was denied, Clasen requested a hearing before an Administrative Law Judge (ALJ), which was held on January 11, 2013. (*Id.* at 63-96, 105-10.) On February 25, 2013, the ALJ issued a decision denying the requested benefits, which became the Commissioner's final determination upon the Social Security

---

[1] The court incorporates the factual recitations of the parties and Judge Hines. (*See generally* Dkt. Nos. 14, 16, 20.)

[2] Page references preceded by "Tr." are to the Administrative Transcript. (Dkt. No. 10.)

Administration Appeals Council's denial of review. (*Id.* at 1-14, 30-52.)

Clasen commenced the present action by filing a complaint on November 7, 2013, seeking judicial review of the Commissioner's determination. (Compl.) After receiving the parties' briefs, Judge Hines issued an R&R recommending that the Commissioner's decision be reversed and remanded. (*See generally* Dkt. No. 20.)

### III. Standard of Review

By statute and rule, district courts are authorized to refer social security appeals to magistrate judges for proposed findings and recommendations as to disposition. *See* 28 U.S.C. § 636(b)(1)(A), (B); N.D.N.Y. L.R. 40.1, 72.3(d); General Order No. 18. Before entering final judgment, this court reviews report and recommendation orders in cases it has referred to a magistrate judge. If a party properly objects to a specific element of the magistrate judge's findings and recommendations, this court reviews those findings and recommendations *de novo*. *See Almonte v. N.Y. State Div. of Parole*, No. Civ. 904CV484GLS, 2006 WL 149049, at *3, *5 (N.D.N.Y. Jan. 18, 2006). In cases where no party has filed an objection, only vague or general objections are made, or a party resubmits the same papers and arguments already considered by the magistrate

judge, this court reviews the findings and recommendations of the magistrate judge for clear error. *See id.* at *4-5.

## IV. **Discussion**

In the R&R, Magistrate Judge Hines found that: (1) any error in failing to find that Clasen's fatigue constituted a severe impairment at step two of the disability evaluation was, at most, harmless; and (2) the ALJ applied incorrect principles of law when weighing relevant medical opinion and subjective evidence to determine Clasen's residual functional capacity (RFC). (Dkt. No. 20 at 4-18.) Specifically, Judge Hines concluded that the ALJ's RFC determination "turned on a perceived lack of objective evidence" contrary to the Second Circuit's instruction in *Green-Younger v. Barnhart*, 335 F.3d 99, 108 (2d Cir. 2003), that fibromyalgia can be a disabling impairment, although no objective tests can conclusively confirm the disease. (*Id.* at 14-18). Because he recommended the case be remanded, Judge Hines did not address Clasen's remaining points relating to the ALJ's mental RFC determination and step five determination. (*Id.* at 18.) The Commissioner raises one specific objection to the R&R, which the court will review *de novo*. In particular, the Commissioner contends that Judge Hines mischaracterized the evidence relied upon by the ALJ in

4

affording "little" weight to the opinion of Clasen's treating physician and nurse practitioner, as well as in discounting Clasen's own statements. (Dkt. No. 22 at 2-8.)[3]

## A. RFC Determination

A claimant's RFC "is the most [he] can still do despite [his] limitations." 20 C.F.R. § 404.1545(a)(1). In assessing a claimant's RFC, an ALJ must consider "all of the relevant medical and other evidence," including a claimant's subjective complaints of pain. *Id.* § 404.1545(a)(3). Under the regulations, controlling weight will be given to a treating source's opinion on the nature and severity of a claimant's impairments where it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence." *Id.* § 404.1527(c)(2); *see Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004). When a treating source's opinion is given less than controlling weight, the ALJ is required to consider the following factors: the length, nature and

---

[3] In responding to the Commissioner's objections, Clasen argues that, even if Judge's Hines' R&R should be rejected, the matter should be remanded for the remaining reasons set forth in his brief, including the ALJ's failure to assess all of Clasen's severe impairments at step two of the sequential evaluation. (Dkt. No. 23 at 3-4.) To the extent that this can be construed as an "objection" to Judge Hines' decision, it is general and does not warrant *de novo* review. Having reviewed Judge Hine's findings with respect to the ALJ's severity decision, and finding no clear error therein, the court accepts and adopts that portion of the R&R. (Dkt. No. 20 at 4-6.)

5

extent of the treatment relationship; the frequency of examination; evidentiary support offered; consistency with the record as a whole; and specialization of the examiner. *See* 20 C.F.R. § 404.1527(c)(2)-(6). The ALJ must provide "good reasons for the weight given to the treating source's opinion." *Petrie v. Astrue*, 412 F. App'x 401, 407 (2d Cir. 2011) (internal quotation marks and citations omitted). Further, "[w]here there is conflicting evidence about a claimant's pain, the ALJ must make credibility findings." *Snell v. Apfel*, 177 F.3d 128, 135 (2d Cir. 1999). An ALJ's RFC determination must be supported by substantial evidence[4] in the record. *See* 42 U.S.C. § 405(g). If it is, that determination is conclusive and must be affirmed upon judicial review. *See id.*; *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996)

Here, in proceeding through the five-step sequential analysis, the ALJ determined that Clasen suffers from "status-post Lyme disease, fibromyalgia, bilateral pes planus, narrowing of the posterior aspect of the intervertebral space at L5-S1, hypotestosterone, anxiety, and depression," which are severe impairments under the regulations. (Tr. at 35-36.)

---

[4] "Substantial evidence is defined as more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept to support a conclusion." *Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990) (internal quotation marks and citations omitted).

Despite suffering these severe impairments, the ALJ found that Clasen retains the RFC to perform sedentary[5] work, including following simple instructions and directions, performing simple and some complex tasks, maintaining attention for simple and some complex tasks, and relating to and interacting with others to the extent necessary to carry out simple tasks. (*Id.* at 40) The ALJ concluded that Clasen should "avoid work requiring more complex interaction or joint effort to achieve work goals." (*Id.*) In making this determination, the ALJ gave "little weight" to the co-signed opinion of treating physician Henda Bouali and nurse practitioner Kelly Miller that Clasen would not be able to perform the demands of sedentary work due to his myalgia, Lyme disease, depression, fatigue, and joint pain.[6] (*Id.* at 44-45, 363-67.) Further, the ALJ found that Clasen's statements regarding the intensity, persistence, and limiting effects of his

---

[5] Under the regulations, "[s]edentary work involves lifting no more than [ten] pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools." 20 C.F.R. § 404.1567(a). Further, a sedentary job is defined as one which involves sitting, and, thus, "periods of standing or walking should generally total no more than about [two] hours of an [eight]-hour workday, and sitting should generally total approximately [six] hours of an [eight]-hour workday." SSR 83-10, 1983 WL 31251, at *5 (1983).

[6] According to Dr. Bouali and Miller, among other things, Clasen could sit and stand or walk for less than two hours a day, rarely lift less than ten pounds, and "often" experienced pain severe enough to interfere with his attention and concentration. (Tr. at 364-66.) Further, Clasen would need breaks every fifteen minutes and would likely be absent "[a]bout three days per month" due to his impairments. (*Id.* at 367.)

7

symptoms only partially credible.[7] (*Id.* at 43.)

Clasen argues that the ALJ failed to provide good reasons for discounting the opinion of Dr. Bouali and Miller, and improperly disregarded his subjective complaints of pain and fatigue, due to the ALJ's "fundamental misunderstanding" of the nature of fibromyalgia. (Dkt. No. 14 at 6-20.) Clasen is correct that fibromyalgia is a disease that eludes objective measurement. (*Id.* at 7); *see Green-Younger*, 335 F.3d at 108. The clinical signs and symptoms to support a fibromyalgia diagnosis include "primarily widespread pain in all four quadrants of the body and at least [eleven] of the [eighteen] specified tender points on the body." *Green-Younger*, 335 F.3d at 108. Otherwise, the Second Circuit has recognized that "[i]n stark contrast to the unremitting pain of which [fibromyalgia] patients complain, physical examinations will usually yield normal results—a full range of motion, no joint swelling, as well as normal muscle strength and neurological reactions." *Id.* at 108-09 (internal quotation marks and citations omitted). Nevertheless, a "mere diagnosis of

---

[7] Clasen testified that he has difficulty exerting himself due to post-exertional fatigue and joint pain. (Tr. at 75-76.) He estimated that, on an average day, he can walk for twenty minutes, stand for thirty minutes, and sit for thirty to forty-five minutes. (*Id.* at 79-80.) He further stated that he can lift less than ten pounds and has difficulty pushing or pulling items such as a grocery cart. (*Id.* at 80.)

8

fibromyalgia without a finding as to the severity of symptoms and limitations does not mandate a finding of disability." *Rivers v. Astrue*, 280 F. App'x 20, 22 (2d Cir. 2008).

In this case, as noted by the ALJ, Dr. Bouali and Miller's very restrictive opinion is inconsistent with their own treatment notes which explicitly rated Clasen's fibromyalgia as mild to moderate in severity. (Tr. at 41, 316, 321, 326, 368, 415.) Further, throughout the record, whenever Clasen was asked to rate the severity of his pain, he never complained of pain greater than a six out of ten, with his pain most frequently reported as a three or four out of ten. (*Id.* at 252, 276, 313, 330, 334, 347, 352.) In addition, consulting examiner Justine Magurno opined that Clasen was only moderately limited in his ability to perform sustained physical activities and had no limitation in his ability to sit.[8] (*Id.* at 279.) It was appropriate for the ALJ to consider the consistency of the treating sources' opinion and Clasen's subjective complaints with the record as a whole. *See* 20 C.F.R. §§ 404.1527(3)(4), 404.1529(c)(4); *Ladd v. Comm'r of Soc. Sec.*, No. 5:13-CV-0236, 2014 WL 2779167, at *2 (N.D.N.Y. June 19, 2014) (finding

---

[8] The only marked limitation Dr. Magurno indicated was Clasen's ability to squat. (Tr. at 279.)

that the ALJ did not err by requiring objective evidence of the claimant's fibromyalgia, but, rather, properly discounted the treating physician's opinion as to the claimant's impaired mobility because it was inconsistent with her own treatment notes).[9] Although the ALJ's decision indicates that, in evaluating the opinion evidence and Clasen's subjective complaints, she considered, in part, the lack of objective evidence, in light of Clasen's other severe impairments, including a lumbar spine impairment, it was not improper for the ALJ to consider such evidence, or lack thereof. (Tr. at 35-36, 43-45). Accordingly, the court rejects Judge Hines' recommendation that the ALJ's decision be reversed and remanded on this basis and will consider Clasen's remaining contentions, which Judge Hines did not address in his R&R.

Turning to the ALJ's assessment of Clasen's mental RFC, Clasen argues that the ALJ failed to account for his attention and concentration deficits. (Dkt. No. 14 at 13.) According to Clasen, the ALJ violated the

---

[9] In addition to the inconsistencies noted above, in making her credibility determination, the ALJ considered the various medical opinions of record, Clasen's treatment history and the gaps therein, his activities of daily living, and his receipt of unemployment benefits after his alleged onset date. (Tr. at 43-45); *see Jackson v. Astrue*, No. 1:05-CV-01061, 2009 WL 3764221, at *8 (N.D.N.Y. Nov. 10, 2009) (holding that, although a claimant's filing for and receipt of unemployment benefits while claiming to be disabled is not proof-positive that claimant was not disabled, the ALJ can properly consider claimant's claim for unemployment benefits when assessing his credibility).

10

treating physician rule when she failed to evaluate the opinion of treating psychologist Angela Crawford and failed to give controlling weight to treating psychologist Paul Tegtmeyer. (*Id.* at 13-14, 19.) Further, he contends that, as the ALJ gave "great weight" to the opinion of nonexamining psychological consultant T. Harding, she should have adopted Harding's opinion that Clasen suffered moderate limitations in social functioning. (*Id.* at 13-15.) Additionally, Clasen claims that the ALJ erred in giving "great weight" to the opinion of consultative examiner Sara Long because she was not a treating source. (*Id.* at 15.) Finally, Clasen argues that the ALJ should have considered the side effects of his medication, the combined effects of his mental impairments, pain, and fatigue, and Clasen's ability to perform work activities on a regular and consistent basis. (*Id.* at 15-16, 22-23.)

In determining that Clasen could understand simple instructions and directions, perform simple and some complex tasks, maintain attention for simple and some complex tasks, and relate to and interact with others to the extent necessary to carry out simple tasks, but should "avoid work requiring more complex interaction or joint effort to achieve work goals," (Tr. at 40), the ALJ relied on the opinions of Drs. Long, Harding, and

11

Tegtmeyer. (*Id.* at 45.) Specifically, Dr. Long opined that Clasen could follow and understand simple instructions and perform simple tasks, maintain attention and concentration and a regular schedule, learn new tasks, perform complex tasks, make appropriate decisions, relate adequately with others, and manage stress. (*Id.* at 274.) According to Dr. Long, Clasen's psychiatric problems did "not appear to be significant enough to interfere with his ability to function on a regular basis." (*Id.*) Dr. Harding completed a Psychiatric Review Technique form and opined that Clasen suffered a mild restriction in his activities of daily living, and moderate difficulties maintaining social functioning as well as concentration, persistence, and pace. (*Id.* at 291.) Nevertheless, Dr. Harding concluded that Clasen "retain[s] the mental capacity to perform the [four] basic functions of unskilled work."[10] (*Id.* at 297.) In January 2013, Dr. Tegtmeyer noted that Clasen's psychiatric symptoms were not in and of themselves "of such severity that they would significantly impact his ability to work competitively." (*Id.* at 372.) However, Dr. Tegtmeyer observed that

---

[10] The regulations provide that the mental activities generally required by competitive, remunerative, unskilled work include: (1) understanding, carrying out, and remembering simple instructions; (2) making judgments that are commensurate with the functions of unskilled work—i.e., simple work-related decisions; (3) responding appropriately to supervision, co-workers and usual work situations; and, (4) dealing with changes in a routine work setting. *See* SSR 96-9p, 61 Fed. Reg. 34,478, 34,483 (July 2,1996); 20 C.F.R. § 404.1521(b)(3)-(6).

the cognitive symptoms of which Clasen complained, such as attention and concentration difficulties, "are not uncommon in individuals with fibromyalgia and chronic fatigue syndrome." (*Id.*)  Dr. Tegtmeyer rated Clasen's ability to perform various mental functions of work and opined that he suffered no more than moderate limitations in any area, meaning that Clasen sustained "some limitations, but overall [he] functions adequately," including in his ability to maintain attention and concentration and perform at a consistent pace.  (*Id.* at 373-74.)

Based on the foregoing, the ALJ's RFC determination with respect to Clasen's ability to carry out the mental functions of work is supported by substantial evidence.  The ALJ did not err in relying on the opinions of the consultative examiner and non-examining psychological consultant, as their opinions were consistent with the medical evidence of record, including Dr. Long's mental status examination results and Dr. Tegtmeyer's examination results and opinion.  (*Id.* at 273-74, 373-74); *see Diaz v. Shalala*, 59 F.3d 307, 313 n.5 (2d Cir. 1995) (noting that the applicable regulations "permit the opinions of non-examining sources to override treating sources' opinions provided they are supported by evidence in the record"); *Baszto v. Astrue*, 700 F. Supp. 2d 242, 249 (N.D.N.Y. 2010) ("[A]n

ALJ is entitled to rely upon the opinions of both examining and non-examining State agency medical consultants, since such consultants are deemed to be qualified experts in the field of social security disability."). Contrary to Clasen's arguments, Dr. Tegtmeyer's opinion supports the ALJ's RFC determination. (Dkt. No. 14 at 19.)

Further, although the ALJ did not expressly weigh the "opinion" of Dr. Crawford, she cited the treatment summary Dr. Crawford provided. (Tr. at 42; 310-11.) The court notes that Dr. Crawford's statements do not appear to reflect her opinion of Clasen's functional limitations, but, rather, her notation of Crawford's subjective complaints. According to Dr. Crawford, Clasen complained of increasing limitations in his functioning that impacted his ability to work. (*Id.* at 310.) She treated Clasen on five occasions and he "frequently struggled with frustration when he had difficulties completing simple daily activities due to pain symptoms and fatigue." (*Id.* at 311.) Clasen reported anxiety and feeling overwhelmed when "unable to complete responsibilities in a consistent, reliable, or timely manner." (*Id.*) Dr. Crawford provided coping strategies for pain and stress management, and, at his last therapy session, "reviewed signs and symptoms that might indicate the need for further psychotherapy in the future." (*Id.*)

14

Nevertheless, even if Dr. Crawford's treatment summary is properly characterized as her medical opinion, as the ALJ clearly considered the statements contained therein and appropriately relied instead on the explicit functional limitations suggested by Drs. Tegtmeyer, Long, and Harding, remand is not required on this basis. *See* 20 C.F.R. § 404.1527(c)(4),(6).

Clasen also asserts that the ALJ erred by failing to consider the impact of pain and fatigue on his attention and concentration. (Dkt. No. 14 at 16.) While the court readily acknowledges that the ALJ must consider "the combined effect of a claimant's impairments . . . in determining disability," *Dixon v. Shalala*, 54 F.3d 1019, 1031 (2d Cir. 1995), there is no basis to argue that the ALJ failed to do so here. In fact, it is clear that the ALJ considered all of Clasen's impairments and their combined effect on him in determining that Clasen could not perform his past relevant work as an engineer, but retained the ability to maintain the attention and concentration required for unskilled work. (Tr. at 41-43, 46-47, 67-68.) That determination is supported by substantial evidence, including the opinion of Dr. Tegtmeyer, who considered Clasen's psychiatric symptoms as well as his complaints of attention and concentration deficits due to

15

fibromyalgia and chronic fatigue syndrome, and concluded that, overall, Clasen could adequately maintain attention and concentration. (*Id.* at 372-73.) Further, although the ALJ did not explicitly discuss the side effects of Clasen's medications, she noted that he takes a variety of medications, though none for his depression or anxiety. (*Id.* at 42-43.) Notably, it is not necessary that the ALJ "'have explained why [s]he considered particular evidence unpersuasive or insufficient to lead h[er] to a conclusion of disability,'" *Petrie*, 412 F. App'x 401, 407 (2d Cir. 2011) (citation omitted), and the court's task is not to determine "whether there is substantial evidence supporting the [claimant]'s view," but, rather, "whether substantial evidence supports *the ALJ's decision*." *Bonet ex rel. T.B. v. Colvin*, 52.3 F. App'x 58, 59 (2d. Cir. 2013).

Finally, although the ALJ did not make any specific findings about Clasen's ability "to do sustained work activities in an ordinary work setting on a regular and continuing basis," which means eight hours a day for five days a week or an equivalent schedule, SSR 96-8P, 61 Fed. Reg. 34,474, 34,475 (July 2, 1996), substantial evidence in the record supports Clasen's ability to perform work on a regular and continuing basis. (Dkt. No. 14 at 22-23.) Indeed, the ALJ relied on Dr. Long's opinion that Clasen's

16

psychiatric problems were not significant enough to interfere with "his ability to function *on a regular basis*," and Dr. Tegtmeyer's opinion that Clasen's psychiatric problems would not significantly impact his ability to work competitively, as well as Clasen's receipt of unemployment insurance benefits after his alleged onset date, which required Clasen to attest that he was capable of working. (Tr. at 43-45, 274, 372 (emphasis added).)

## B. <u>Vocational Expert Testimony</u>

Lastly, Clasen contends that the ALJ was obligated to obtain testimony from a vocational expert (VE). (Dkt. No. 14 at 23-25.) According to Clasen, because he suffers "substantial non-exertional limitations" and the ALJ's RFC determination was "convoluted," the ALJ erred in relying on the Medical-Vocational Guidelines to determine that there was work in the national economy that he could perform. (*Id.*) The court disagrees.

In making her ultimate disability determination, the ALJ must consider whether the claimant can do any other, less demanding work existing in the national economy. *See* 20 C.F.R. §§ 404.1520(g), 404.1560(c); *White v. Sec'y of Health & Human Servs.*, 910 F.2d 64, 65 (2d Cir. 1990). To make such a determination, an ALJ may rely on the Medical-Vocational Guidelines, referred to as "the grids," found in 20 C.F.R. pt. 404, subpt. P,

17

app. 2, as long as the claimant's age, education, work experience, and RFC coincide with the criteria of a rule contained in those Guidelines. *See* 20 C.F.R. § 404.1569; *see also Calabrese v. Astrue*, 358 F. App'x 274, 275 n.1 (2d Cir. 2009). However, "if a claimant's nonexertional impairments 'significantly limit the range of work permitted by his exertional limitations' then the grids obviously will not accurately determine disability status because they fail to take into account claimant's nonexertional impairments." *Bapp v. Bowen*, 802 F.2d 601, 605 (2d Cir. 1986) (quoting *Blacknall v. Heckler*, 721 F.2d 1179, 1181 (9th Cir. 1983)). In that case, the ALJ should consult with a VE before making a determination as to disability. *See id.*

Although the ALJ determined that Clasen suffered nonexertional limitations, she further determined that these limitations would no more than minimally limit his ability to perform unskilled sedentary jobs. (Tr. at 47.) As the opinions of Drs. Long, Harding, and Tegtmeyer indicated that Clasen could perform the mental demands of unskilled work, the ALJ's determination that Clasen's nonexertional limitations did not significantly erode the occupational base of sedentary unskilled work was supported by substantial evidence. (*Id.* at 274, 297, 373.) Thus, consultation with a VE

18

was not required. *See Bapp*, 802 F.2d at 605-06.

## C. Remaining Findings and Conclusions

After careful review of the record, the court affirms the remainder of the ALJ's decision as it is supported by substantial evidence.

## V. Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that the portion of Magistrate Judge Earl S. Hines' November 7, 2014 Report and Recommendation (Dkt. No. 20) affirming the Commissioner's step two severity determination is **ADOPTED** and it is further

**ORDERED** that the November 7, 2014 Report and Recommendation of Magistrate Judge Earl S. Hines is otherwise **REJECTED**; and it is further

**ORDERED** that the decision of the Commissioner is **AFFIRMED** and Clasen's complaint (Dkt. No. 1) is **DISMISSED**; and it is further

**ORDERED** that the Clerk close this case and provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

March 24, 2015
Albany, New York

Gary L. Sharpe
Chief Judge
U.S. District Court